IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| STATE FARM LIFE AND ACCIDENT ASSURANCE COMPANY, | OPINION AND ORDER |
| Plaintiff,<br>v. | 14-cv-885-wmc |
| JEFFREY S. GOECKS and DONNA GOECKS, | |
| Defendants. | |

---

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | OPINION AND ORDER |
| Plaintiff,<br>v. | 15-cv-11-wmc |
| JEFFREY S. GOECKS and DONNA GOECKS, | |
| Defendants. | |

---

Plaintiffs State Farm Life and Accident Assurance Company and Prudential Insurance Company of America initiated these interpleader actions under 28 U.S.C. § 1335 to resolve a dispute over the proceeds from three of their policies held by and insuring the life of Gary Goecks. As principal claimants, the insurance companies named as defendants Donna Goecks, Gary's surviving wife, and Jeffrey Goecks, Gary's son from his former wife.[1] At the time of Gary's death, Donna was a named beneficiary under each of the policies, but Jeffrey

---

[1] Interpleader jurisdiction is present under § 1335(a)(1) because the insurance policies are worth more than $500, the claimants are of diverse citizenship (Jeffrey Goecks is a citizen of Wisconsin; Donna Goecks is a citizen of Florida), and the insurance companies have deposited the proceeds into the registry of this court.

1

claims he is entitled to all of the policy proceeds based on a provision in the judgment entered in connection with Gary's divorce from his first wife. After the suit was filed, Jeffrey also filed a cross-claim against Donna for proceeds from a fourth life insurance policy, issued by Met Life.[2] Both sides have filed motions for summary judgment, which are ready for review.

### UNDISPUTED FACTS[3]

Gary and Sharon Goecks divorced on October 15, 1998. At the time of their divorce, Gary had multiple life insurance policies, 5 of which are relevant to this case: (1) Prudential Policy Number 36066690; (2) Prudential Policy Number 77467219; (3) State Farm Policy Number 195846; (4) State Farm Policy 2786899; and (5) a Met Life policy that was part of Gary's pension from General Motors Life and Disability Program, Group Plan Number 0122357.

The judgment of divorce was drafted by Sharon's attorney. Paragraph 14(d) of the judgment states:

> The respondent [Gary] shall be required to maintain the petitioner [Sharon] as the primary, irrevocable beneficiary on one third of the face value of all his life insurance policies in effect as of the date of the final hearing or in the amount of Seventy Five Thousand Dollars ($75,000) of the face value of said policies, whichever sum is greater. Respondent shall provide the petitioner proof of said insurance and beneficiary designations. Petitioner shall pay the respondent the sum of Twenty Five Dollars ($25.00) per month toward the cost of said insurance. The parties further agree to designate the children as primary beneficiaries of all life insurance policies except as set forth above.

---

[2] Met Life is not a named party to this lawsuit.
[3] The court finds the following facts material and undisputed, unless otherwise noted, consistent with the parties' proposed findings of facts and responses.

(Dkt. #29-1.)[4] The proposed "division of property" was also incorporated into the judgment of divorce, which identified all four Prudential and State Farm policies, but did not reference the Met Life policy.

In the fall of 1998, around the time of the divorce, Gary designated the couple's two adult sons -- Jeffrey and Christopher Goecks -- as primary beneficiaries under the Prudential and one of the State Farm policies, leaving Sharon as the beneficiary of the other State Farm policy. Around that same time, in November of 1998, Gary also completed a "Designation of Beneficiaries" form for the Met Life policy, which stated that the beneficiaries would be determined in accordance with the provisions of the divorce decree, with any "excess amount" going to his sons, Jeffrey and Christopher. (Dkt. #22-1.)

On July 12, 2003, one of the sons -- Christopher Goecks -- died, and on February 7, 2004, Gary married Donna. While married to Donna, Gary changed the primary beneficiary designation on both Prudential policies to Donna, removing Jeffrey and Christopher as beneficiaries. He also changed the beneficiary designation on the Met Life policy from his sons to Donna. Finally, he designated Donna and Jeffrey as co-beneficiaries on one of the State Farm policies, with Sharon remaining the beneficiary of the other one.

After Gary died on August 18, 2014, the proceeds of one State Farm policy with benefits of $75,000 was paid out in full to Sharon. Although both Donna and Jeffrey submitted claims to the proceeds of the Met Life policy, Met Life paid Donna the full proceeds in the amount of $60,737.41 consistent with Gary's designation. In a letter addressed to Sharon Goecks, dated February 12, 2015, Met Life explained that it was

---

[4] Citations are to document numbers in Case Number 14-cv-885-wmc, unless otherwise noted.

rejecting her ( really her son Jeffrey's) claim because the General Motors Life and Disability Program was an employee welfare plan regulated by ERISA. (Dkt. #29-6.) According to Met Life, ERISA required the plan administrator to pay the beneficiary designated by the plan participant unless there was a "qualified domestic relations order" that superseded the participant's designation. Met Life opined that the 1998 divorce judgment was not a valid qualified domestic relations order under Seventh Circuit law because it failed to "identify the payment of insurance benefits from a specific plan." Met Life concluded, therefore, that "the beneficiary designation on file with the plan controls pursuant to federal law and the terms of the plan." (*Id.*).

Finally, both Gary's present wife Donna and son Jeffrey made claims to his two Prudential and the other State Farm policies.[5] Prudential deposited the proceeds from its two policies in the amount of $39,536.54 with the court. State Farm likewise deposited the proceeds of its remaining policy in the amount of $22,003.34 with the court.

OPINION

I.      The Prudential and State Farm Policies.

   A.     Breach of Contract

The parties agree that the 1998 divorce judgment is a binding contract that controls the outcome in this case. *See Waters v. Waters*, 2007 WI App 40, ¶ 6, 300 Wis. 2d 224, 229, 730 N.W.2d 655, 657-58 (divorce judgments based on stipulations "are in the nature of a contract" to which "rules of contract construction" apply). The disagreement centers on the

---

[5] According to the parties, no claim to the polices has been made on behalf of Christopher Goecks' estate.

4

*meaning* of that judgment.

Jeffrey argues the judgment required Gary to maintain Jeffrey, as the sole surviving child of the marriage, as the primary beneficiary on his life insurance policies, with the exception of the $75,000 that was expressly designated by the judgment for Sharon. Jeffrey further argues that his father Gary violated that same judgment by naming Donna as a primary beneficiary under the two Prudential, the other State Farm and the Met Life policies.

In contrast, Donna argues that the divorce judgment required only that Gary name Jeffrey as *a* primary beneficiary, but never required Gary to *maintain* Jeffrey as the *exclusive* or *permanent* beneficiary. Indeed, Donna goes further, arguing that Gary fulfilled his contractual obligation under the divorce judgment by naming Jeffrey and Christopher as primary beneficiaries in 1998, even though he later changed these beneficiary designations.

Both parties cite general principles of Wisconsin contract law in support of their respective positions. Wisconsin applies familiar rules of contract interpretation, with the ultimate aim being to ascertain the intent of the parties. *See Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W. 2d 476 ("[T]he best indication of the parties' intent is the language of the contract itself[.]") In reviewing this language, the court must strive "to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.'" *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 45, 326 Wis.2d 300, 786 N.W.2d 15 (citation omitted). If the parties' intent can be determined with reasonable certainty from the face of the contract itself, then there is no need to resort to extrinsic evidence. *Patti v. Western Machine Co.*, 72 Wis. 2d 348, 351-52, 241 N.W.2d 158 (1976). If, however, the language of the contract is

ambiguous -- meaning that it is "reasonably susceptible to more than one meaning" -- then the court may consider extrinsic evidence to ascertain intent. *Id.* Such extrinsic evidence may include "the conduct of the parties and negotiations which took place, both before and after the execution of the documents, and . . . all related documents of the parties." *Smith v. Osborne*, 66 Wis. 2d 264, 272, 223 N.W.2d 913, 917 (1974).

Here, both parties claim that the unambiguous language in the divorce judgment requiring Gary "*to designate the children as primary beneficiaries of all life insurance policies*" dictates the outcome of this lawsuit, albeit with nearly polar opposite results. Jeffrey argues that this language required Gary to designate *and* maintain his two adult children as the sole primary beneficiaries. Despite taking the position that the judgment language is unambiguous, Jeffrey also argues that this is the only "logical" and "fair" interpretation of that phrase and presents Sharon Goecks' affidavit as extrinsic evidence in support of his interpretation of the judgment. In that affidavit, Sharon avers that: (1) Gary and she negotiated the divorce judgment; (2) she believed Gary was required by the divorce judgment to "keep all of his life insurance held at the time of the divorce in place for [her] benefit and for the benefit of [their] sons"; and (3) this requirement had value to her, as she "wanted to make sure [she] was provided for and [their] sons were provided for at the time of Gary's death." (Dkt. #25, ¶¶ 9, 10.)

In response, Donna would reject out of the box Jeffrey's reliance on Sharon's affidavit, arguing that because the divorce judgment is unambiguous, the court should not look to extrinsic evidence for meaning. Additionally, Donna argues, Sharon's affidavit is self-serving and should be barred by Wisconsin's dead man's statute, Wis. Stat. § 885.16, which broadly

speaking "disqualifies a witness to a transaction or communication with a decedent from testifying about that transaction or communication in his or her favor, or in the favor of any party to the case claiming under the witness." *Rutter v. Copper*, 2012 WI App 128, ¶ 17, 344 Wis. 2d 596, 824 N.W.2d 885. Donna suggests instead that because Sharon's attorney drafted the divorce stipulation, the court should construe any ambiguities against Sharon and Jeffrey.[6]

As for her interpretation of the divorce judgment, Donna points out that the phrase in dispute does not include the words "*maintain*" or "*irrevocable*," nor any other such limiting words. Additionally, Donna argues that the parties knew how to use such words to limit Gary's ability to change beneficiaries, as a separate sentence within the same paragraph required Gary to "*maintain*" Sharon as the "*primary, irrevocable* beneficiary" on $75,000 worth of life insurance. In contrast, the sentence at issue states only that both Gary and Sharon will designate the children as primary beneficiaries on their life insurance policies. Donna points out that the language does not expressly preclude Gary or Sharon from: (1) changing

---

[6] The court is skeptical of Donna's argument that the dead man's statute would preclude consideration of Sharon Goecks' affidavit, as the Wisconsin Court of Appeals appears to have considered testimony from a surviving former wife in a case involving a similar factual scenario. *See Duhame by Corrigal v. Duhame*, 154 Wis. 2d 258, 264-65, 453 N.W.2d 149, 151 (Ct. App. 1989). Additionally, the court is not persuaded that any ambiguity should be construed against Sharon, as the general rule in favor of construing ambiguities against the drafter is most apt in situations in which the drafting party has superior bargaining power and exerts it over the non-drafting party. *See, e.g., Walters v. National Properties, L.L.C.*, 2005 WI 87, ¶ 14, 282 Wis. 2d 176, 699 N.W.2d 71. Here, the divorce judgment in dispute is not a standard form contract between parties of unequal bargaining power. There is no evidence that Gary was offered the contract on a take it or leave it basis, nor that he was unable to negotiate the terms of the stipulation. Rather, the record suggests that the judgment was based on a stipulation negotiated between Gary and Sharon. That being said, the court need not resolve these disputes or consider any extrinsic evidence because, for reasons explained below, Donna has not shown that the divorce judgment is open to more than one *reasonable* interpretation.

their beneficiary designations at some point in the future; or (2) designating others as primary beneficiaries in addition to their sons. Donna further argues that because the divorce decree does not explicitly prohibit, nor even address, future changes to beneficiary designations, the plain language of the contract permitted Gary's actions.

Although arguable under a hyper-technical reading of the divorce judgment, Donna's suggested interpretation renders absurd results. If the divorce judgment only required that Gary name his sons as beneficiaries, but permitted him to change his beneficiary designations at any time and for any reason, the provision was essentially meaningless from the outset. Indeed, under Donna's interpretation, Gary would have been in compliance with the stipulation if he had named his sons as primary beneficiaries for a period of one hour, one day, or one week, but then changed the beneficiary designation to someone else. Such an interpretation would render the provision absurd and meaningless, something courts are directed to avoid under Wisconsin contract law. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶ 2, 351 Wis. 2d 123, 128, 839 N.W.2d 425, 427 (courts "must interpret contracts to avoid absurd results"); *Maryland Arms*, 2010 WI 64, ¶ 45 (courts should avoid interpretations "which render portions of a contract meaningless, inexplicable or mere surplusage").

Moreover, a very similar argument to Donna's has already been rejected by the Wisconsin Supreme Court. In *Estate of Boyd*, 18 Wis. 2d 379, 118 N.W.2d 705 (1963), the divorce judgment at issue included a provision requiring the former wife, Beatrice, to be "inserted as beneficiary in" Boyd's life insurance policy. *Id.* at 380. About a month after the divorce judgment, however, Boyd removed Beatrice as a beneficiary of the policy. Upon

Boyd's death, Beatrice filed a claim against his estate for the amount of the policy. Noting that the divorce judgment contained no express prohibition against a change in beneficiary, the trial court concluded that the claim had to be disallowed because Beatrice did not have a vested right in the insurance contract. Accordingly, the trial judge concluded, Boyd was entitled to remove her as the beneficiary.

The Wisconsin Supreme Court reversed, pointing out that the provision in the divorce judgment was pursuant to a stipulation of the parties. The supreme court relied on the rule of *Miner v. Miner*, 10 Wis. 2d 438, 444, 103 N.W.2d 4 (1960), which held that (1) a stipulation in a divorce action is in the nature of a contract and (2) a contract should be given a construction that will effectuate what appears to have been the intention of the parties. In particular, the court rejected the notion that the parties to the divorce judgment could have intended that Boyd be "free to [] change[] the beneficiary immediately after the judgment." *Id.* at 381. In rejecting such an interpretation as unreasonable, the court explained that the trial court's interpretation would be tenable only if the parties to the divorce action had intended to stipulate "to something valueless and that the judgment based thereon was intended to mirror such emptiness." *Id.*

Subsequent Wisconsin cases have applied *Boyd* to factual scenarios nearly identical to that in this case. In *Richards v. Richards*, 58 Wis. 2d 290, 295-96, 206 N.W.2d 134, 136-37 (1973), an action was brought by children to recover proceeds of a life insurance policy on the life of their father, which had been paid to their father's second wife. A divorce judgment between their father and his first wife had required him to "name the minor children . . . as beneficiaries" on the life insurance policies. Nevertheless, when their father later remarried,

9

he changed the beneficiary designation from the children to his second wife. Relying on its reasoning in *Boyd*, the Wisconsin Supreme Court concluded that the children were entitled to the proceeds of the policy. As the court explained, "[t]he holding in *Boyd* makes it clear that, although a divorce judgment does not expressly prohibit the owner of an insurance policy from changing the beneficiary, the decree of the court is to be given the effect of a continuing obligation to carry out the provisions set forth therein." *Id.* at 296. Accordingly, the Court ordered that a constructive trust be imposed on the insurance proceeds that had been paid out to the second wife.

Similarly, in *Duhame by Corrigal v. Duhame*, 154 Wis. 2d 258, 264-65, 453 N.W.2d 149, 151 (Ct. App. 1989), a divorce stipulation required that the father "shall keep said minor children as beneficiaries of all life insurance available to him at his place of employment." *Id.* at 262. When the father subsequently remarried, he, too, substituted his second wife as the primary beneficiary on his life insurance policy. After he died, the children sued for benefits. In finding for the children, the Wisconsin Court of Appeals rejected the second wife's argument that "the language of the stipulation clearly and unambiguously permitted [the deceased] to execute the change in beneficiary because the children are not recited as the *exclusive* beneficiaries under the policy." *Id.* at 264 (emphasis in original). The court stated that acceptance of this argument would mean that the deceased was "free to change or add beneficiaries at will," making the stipulation valueless. The court noted that the Wisconsin Supreme Court had already "rejected the functional equivalent of this argument" in *Boyd*. *Id.* at 265.

This line of cases would also seem to foreclose Donna's functionally equivalent

10

argument that Gary was free to change or add beneficiaries at will. Surprisingly, however, neither Jeffrey nor Donna refer to this line of cases when discussing the appropriate interpretation of the divorce judgment in their briefs. Jeffrey cites these cases only in support of his argument that the court has the authority to create a constructive trust in his favor. For her part, Donna makes no argument as to why her claim to priority is distinguishable from these cases, even as to creation of a constructive trust, perhaps out of recognition that no credible retort exists.[7] Regardless the court agrees that a plain reading of the divorce judgment required Gary to name and maintain his sons as primary beneficiaries of his Prudential and State Farm life insurance policies. Accordingly, he breached the judgment by changing the beneficiary designations from his sons to his new wife.

B.     Remedy

This holding alone does not, however, resolve the issues between the parties in this case, even as to the life insurance policies in place at the time of the judgment. There is a material factual difference between the *Boyd*, *Richards* and *Duhame* cases and the present one. None of those cases involved a situation in which one of the beneficiaries designated under the divorce judgment predeceased the policy holder. Here, in contrast, the divorce judgment required Gary to name his sons as primary beneficiaries to his life insurance policies, but

---

[7] While the judgment does make special reference to maintaining Sharon's status "as the primary, irrevocable beneficiary," while referring to the sons' status as "primary beneficiaries," this does not render the thrust of the *Boyd* line of cases any less compelling, particularly when the reason for emphasizing the irrevocable nature of an ex-spouse's interest is obvious, as opposed to that of one's children (at least absent evidence of estrangement). The only other distinguishable fact (beyond Christopher's untimely death) discussed in the next section of this opinion from *Boyd*, *Richards* and *Duhame*, is that each involved minor children, but this is ultimately immaterial since there is no dispute that Jeffrey and Christopher were already adults when the divorce judgment was entered, removing any argument for a constructive end to Gary's obligation.

provides no guidance as to what should happen if one of the sons predeceased Gary. For example, the divorce judgment does not say whether the proceeds would be distributed to the surviving son, the deceased son's heirs, or to someone else. Apparently, the policies themselves provide no guidance on this issue either, as neither side has provided the policies to the court. Nor have the parties made any attempt to address the issue in terms of Wisconsin insurance, inheritance or contract law.

Jeffrey states only that, "[i]deally, the judgment would provide for the death of one or both of the parties' children, clarifying that the parties either wanted the deceased child's proceeds to go to the deceased child's heirs, or, alternatively, all proceeds to the surviving child." (Jeffrey's Br. (dkt. #35) at 3). Acknowledging that the divorce judgment provides no such instruction on this issue, Jeffrey states, without explanation, that it would be "logical and fair" for him to receive all of the proceeds. (*Id.*) Donna criticizes Jeffrey's conclusory analysis, but again chooses to provide no further analysis of her own. Perhaps because it serves neither of their self-interests, neither side offers any information about whether Christopher even has heirs, and if so, whether they are aware of this lawsuit.

Thus, although the court concludes that Jeffrey is entitled to proceeds of the Prudential and State Farm policies, the court cannot determine the percentage of the benefits to which Jeffrey is entitled without further briefing from the parties addressing how Christopher's death affects the mandates of the divorce judgment. Accordingly, the parties have **14 days** to file briefs on this narrow issue. The parties should cite facts of record and legal authority in support of their positions, rather than simply relying on their respective opinions regarding "fairness" and "logic" as they have done thus far. In particular, they

12

should also address whether Christopher Goecks' estate or heirs have been notified of this lawsuit and whether they should be made parties. The court will address the possible distribution of the proceeds on deposit with the court after reviewing the parties' submissions on this issue. Because the court can see no reason for a trial to resolve this final issue, the May 16th trial date shall be stricken.

II.   **Met Life Policy.**

The divorce judgment at least arguably applies to all of the life insurance policies held by Gary at the time of his death, including the Met Life policy. At least for the purposes of this case, however, both sides concede that Met Life properly concluded its policy was governed by the Employee Retirement Income Security Act of 1964 ("ERISA"). While Donna argues that ERISA dictates how the Met Life proceeds must be paid, Jeffrey argues that this court has the authority to impose a constructive trust for his benefit on the proceeds already paid to Donna under ERISA.[8]

ERISA contains a general preemption clause which states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). There is an exception to this preemption for "qualified domestic relations orders," 29 U.S.C. § 1144(b)(7), which excludes from ERISA preemption any domestic relations order which "creates or recognizes the existence of an alternate payee's

---

[8] Although the parties' entitlement to the Met Life policy is dictated by ERISA as discussed above, Jeffrey's entitlement to benefit from that policy is less compelling depending upon whether the references in the last sentence to "all life insurance policies" is more appropriately cabined by the other references in ¶ 14(b) of the judgment to "all" policies "in effect as of the date of the final hearing."

13

right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I). In rejecting Jeffrey's claim and paying the proceeds to Donna, Met Life concluded that the 1998 divorce judgment was not a "qualified domestic relations order" for several reasons. Jeffrey does not contest Met Life's analysis, nor does he argue that Met Life erred by distributing the proceeds to Donna. Instead, he argues that this court may rely on "principles of equity" to impose a constructive trust on the Met Life proceeds without running afoul of ERISA preemption.

Unfortunately for Jeffrey, the Seventh Circuit rejected this argument in *Melton v. Melton*, 324 F.3d 941 (7th Cir. 2003), a case involving essentially the same factual scenario. In that case, the daughter of the deceased brought an action against the deceased's second wife, his employer, and the administrator of a group term life insurance plan, claiming that she was entitled to the proceeds of an ERISA-governed life insurance policy. The daughter had been designated as the beneficiary in a prior divorce settlement, whereas the second wife was the named beneficiary in the policy documents. *Id.* at 943. The daughter filed suit seeking to impose a constructive trust upon the proceeds of the policy.

In *Melton*, the Seventh Circuit concluded that ERISA preempted Illinois state law with respect to determining the rightful beneficiary of proceeds from an ERISA-regulated life insurance policy. Relying on *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), in which the Supreme Court expressly rejected an attempt by plaintiffs to "invoke state law doctrines to their advantage in determining their status as beneficiaries under ERISA-regulated employee benefits plans," *id*. at 143, the Seventh Circuit concluded that ERISA required

14

benefits be paid out according to the persons named in the plan documents. *See also Reliastar Life Ins. Co. v. Keddell*, No. 09-C-1195, 2011 WL 111733, at *2 (E.D. Wis. Jan. 12, 2011) (relying on *Melton* to reject a similar claim, concluding that "[s]tate law governing constructive trusts cannot be used to circumvent the terms of an insurance policy governed by ERISA").

Jeffrey attempts to distinguish *Melton* on the ground that the policy proceeds in that case had not yet been paid, whereas Met Life has already paid the proceeds to Donna. Creatively, Jeffrey argues that this distinction matters because imposing a constructive trust at this point would not run afoul of ERISA, as it would not interfere with a plan administrator's duties to pay benefits according to beneficiaries named in the policy. This argument is not persuasive, however, as there is nothing in *Melton* or *Egelhoff* attaching any significance to the fact that the plan administrator had not yet paid the benefits in question. If anything, acceptance of Jeffrey's argument would be an endorsement of a work-around to the holding in *Melton*. A person who believed he or she was entitled to proceeds of an ERISA-governed life insurance policy, despite not being a named beneficiary, could simply wait until the proceeds were paid by the administrator and then sue for imposition of a constructive trust based on the same arguments rejected in *Melton*. If permitted, this could potentially expose not just beneficiaries, but employers and administrators to the nuances of 50 state laws, rather than federal law governing ERISA, contrary both to the Supreme Court's *Egelhoff* and the Seventh Circuit's *Melton* decisions.

Finally, the case cited by Jeffrey in support of his argument, *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970 (N.D. Ind. 2009), is distinguishable. That case involved a

15

dispute between the former wife of the deceased and the deceased's father, who owned the ERISA-governed policy at the time of the deceased's death. There was no dispute that the former wife was entitled to distribution of the policy proceeds as the named beneficiary under the plan, but there was a dispute regarding whether the former wife had entered into an oral contract with the father of the deceased that required her to use the proceeds for the benefit of her minor son. The court concluded that this claim was not preempted by ERISA because there was no dispute that the proceeds should be distributed according to the plan documents. *Id.* at 981.

Even assuming the decision in *Schumacher* can be reconciled with *Melton*, the factual scenario of the present case is much closer to that in *Melton*. Unlike in *Schumacher*, Jeffrey has not suggested that there is a contract under which *Donna* has agreed to receive the proceeds of the policy but use them for his benefit. Rather, Jeffrey believes the divorce judgment entitles *him* to receive the proceeds of the policy for his own benefit. Since this is the same claim that was squarely rejected in *Melton*, Jeffrey is not entitled to the proceeds of the Met Life policy.

ORDER

IT IS ORDERED that:

1. Defendant Donna Goecks' motion for summary judgment (dkt. #27 in 14-cv-885, dkt. #26 in 15-cv-11) is GRANTED IN PART with respect to Donna Goecks' claim that she is entitled to retain the proceeds of the Met Life policy already paid to her and DENIED in all other respects.

2. Defendant Jeffrey Goecks' motion for summary judgment (dkt. #20 in 14-cv-885, dkt. #20 in 15-cv-11) is DENIED IN PART with respect to Jeffrey Goecks' claim that he is entitled to proceeds of the Met Life policy and GRANTED IN PART with respect to Jeffrey Goecks' claim that he is entitled

16

       to proceeds from the Prudential and State Farm policies. The court reserves a ruling regarding the specific amount to which Jeffrey Goecks is entitled pending resolution of any claim to those proceeds by Christopher Goeck's estate or heirs.

3.     The parties may have **14 days** to file briefs, supported by citation to the record and legal authority, addressing how Christopher Goecks' death affected the requirements of the divorce judgment, whether his estate or heirs have been notified of this lawsuit and whether his estate or heirs should be made party to this lawsuit.

4.     All remaining deadlines, including the May 16, 2016, trial, is stricken from the calendar.

Entered this 28th day of April, 2016.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge